UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
DOCKET NO. 3:04-CR-34

RECEIVED
JUL 17 2006
CLERK, U.S. DISTRICT COURT
ANCHORAGE, ALASKA

UNITED STATES OF AMERICA,

RESPONDENT

V.

HERMAN OYAGAK,

PETITIONER

---

MOTION TO AMEND PURSUANT TO FED. R. CIV. P. 15 (c),
TO A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2255
MEMORANDUM OF LAW, ARGUMENT IN SUPPORT

---

Dated:_____

Herman Oyagak
Fed. Reg. No. 14941-006
U.S Pentitentiary
3901 Klein Boulevard
Lompoc, California
93436

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | DOCKET NO. |
| RESPONDENT | : | 3:04-CR-34 |
| | : | |
| | : | |
| V. | : | |
| | : | |
| | : | |
| HERMAN OYAGAK, | : | |
| PETITIONER | : | |

  Whether or not petitioner was deprived of his Federal and Constitutional right protected under the Sixth (6th) Amendment, the right to effective assistance of counsel, by counsel's failure to prepare, argue customary trade is a "subsistence use" provision Alaska National Interest Lands Conservation Act. ANILCA requiring that nonwasteful subsistence uses of fish and wildlife be given priority over all other uses, and the term "customary trade" include some sales for cash, and thus, to the extent that Alaska Law prohibits sales that are part to customary trade, it conflicts with ANILCA, Alaska National Interest Land Conservation Act.

 Petitioner "dispute implicating two recurring Alaska motifs: on the one hand the cash between traditional and modern ways

-1-

of life; on the other fish." **Kenaitze Indian Tribe v. Alaska, 860 F. 2d 312, 313 (9th Cir. (1988).** The juxtaposition of these two motifs; is not accident. Many Alaska natives who are not fully part of the modern economy rely on fishing for subsistence, if their right to fish is destroyed, so too is their traditional way of life. To prevent destruction of "native physical, aconomic, traditional and cultural existance." **16 U.S.C. § 3111 (1)** Congress passes the Alaska National Interest Land Conservation Act, (ANILCA), Pub. L. No. 96-487 Stat. 2371 (1980) (codified as amended in scattered sections of title 16 and 43 on the United States Code) ANILCA protects "subsistence uses [of fish and wildlife] on the public lands by native and nonnative rural residents." **16 U.S.C. § 3111 (4),** by requiring non wasteful substance uses of fish and wildlife be given priority over all other uses; subsistence uses may not be restricted unless necessary to protect the continued viability of fish and wildlife populations. **Id. § 3114.**

ANILCA, however, is a law without bite it does not of its own force regulate subsistence and nonsubsistence uses; it criminalizes no conduct: it prescribes no penalties. In fact ANILCA does little more than provide a broad outline of what uses may be preferred over others; it leaves implementation to the Secretary of the Interior. See, Id. 3115 (a)(d).

ANILCA also contains an op-in clause for the state of Alaska; if Alaska enacts laws consistent with Federal Statute, the Federal shame is stayedand Alaska controls instead. ID § 3115 (d). Given the choice between federal regulation or self-

regulation with federal oversight, Alaska chose the latter." **Kenaitze Indian Tribe**, 860 F. 2d at 314 , it hatched a complex set of hunting and fishing regulations, all of which, to be consistent with ANILCA, must give priority to subsistence uses. While petitioner were not prosecuted under state law, this state regulations lied at the heart of this disputenontheless, to sustain conviction under Lacy Act, the Government must prove that the Walrus was taken in violation of State law. See 16 U.S.C. § 3372 (a)(1).

Petitioner argue that both regulations are invalid because they interfere with "custom trade" one of the subsistence , protected by ANILCA. The controversy centers on the meaning of customary trade, and specifically, whether includes sales for cash. Petitioner argue that the regulation prevents Alaska natives from engaging in a subsistence use called "customary trade." customary trade, petitioner contends, included sales for cash. the dispute turn in the answer in two questions; first the customary trade a subsistence use protected by ANILCA?, second, does customary trade includes sales for cash?

The first question has an easy answer; customary trade is, in fact, subsistence use. ANILCA defines subsistence uses as:

> The customary and traditional uses of rural Alaska residents of wild, renewable resorses...... for bating, or sharing for personal consumption and **for customary trade.** 16 U.S.C. § 3113 (emphasis added).

-3-

The second question whether customary trade includes sales for cash is harder ANILCA does not define customary trade. Nonetheless, trade is commonly defined as "[t]he act......buying, selling for money; traffic; barter;" Black's Law Dictionary 1492 (6th ed. 1990). It appears therefore, the customary trade could include sales for cash, as well as barter transaction.

Examining the statute further leads to conclusion that a such an interpretation is not merely permissible but necessary. "Barter"is separately listed as subsistence use, **16 U.S.C. § 3113**; in the phrase "customary trade" is to add anything at all to the statute it must include buying and selling for money. Another panel of this Court appears to have reached the same conclusion. See, <u>United States v. Skinna</u>, **931 F. 2d 530, 532 (9th Cir. 1991)**(customary trade presumably "differs from barter, which is defined as noncommercial exchange for items other than money"). The Alaska Board of Fisheries and Game seem to agree; their criteria for identifying subsistence uses provide that customary trade may include limited exchange for cash. Because we are interpreting the meaning on a phrase that appears in a Federal Statute. We owe the State regulatory Agency's interpretation no deference. <u>Kenaitze Indian Tribe</u>, **860 F. 2d at 315, 316.**However, we find it constructive that the regulations of the JOint of Boards of Fisheries and Game contradicts the Government's argument that customary trade exclude sales for cash

> Whether or not counsel failed bellow the standard of effective assistance of counsel, guarantee by the Sixth (6th) Amendment, by counsel's failure to prepare a

-4-

> Defense to a charge of transporting interstate or foreign commerce fish taken or sold in violation of Alaska regulation prohibiting cash sales for walrus caught for subsistence, that such sales are part of customary trade. Petitioner is a rural Alaska Native for whom such a trade is "customary traditional".

Of course this defense is not available to all Alaskans. Petitioner meet the criteria of the defense, petitioner is a rural Alaska native from whom a such a trade is ¶customary and traditional." Counsel's failure to prepare a defense on this grounds, fell bellow the standard of the right to effective assistance of counsel. Petitioner was prejudiced by counsel's action or inactions, further more the transaction was consistent with a subsistence lifestyle. This case put an issue a proper construction of three (3) interrelated provisions of the Lacy Act, two (2) dating to the Act's 1981 Amendment, and one to its 1988 Amendment.

The first 16 U.S.C. § 3372 (a)(2), is a general prohibitory provision, it establishes the universe conduct which may give raise to civil and criminal liability under the act. Insofar is relevant here, it provides: "It is unlawful for any person.......to import, export, transport, sell, receive acquire, or purchase interstate or foreign commerce....... to any.......wildlife taken, possesse, transported, or sold in a violation of any of the regulation of any state.

The second provision, 16 U.S.C. § 3372(c), was added in 1988 to "overturn" <u>United States v. Stenberg</u>, 803 F. 2d 422 (9th Cir.

-5-

1986) See, S. Rep. 100-563, at 9-10 (1988) reprinted (1988) U.S.C.C.N. 5366, 5374-75 Section 3373 (c). Effectevely abrogates **Sternburg**, by providing specialized definitions of the term "Sale" and "purchase" to be applied throughout the Act. In pertinent part the provision reads: it its deemed to be a purchase of........wildlife in violation of this chapter for obtain for money or other consideration......for the illegal taken, acquiring, receiving, transporting, or possessing of .........wildlife. **16 U.S,C, § 3372 (c).**

The third and most relevant provision for present purposes is **16 U.S.C. § 3373 (d)** although the provision bears the caption "criminal penalties," it does not simply prescribes punishment for conduct describe elsewhere in the Act. Instead, the provision effectevely sets forth the substantive elements of the Act's criminal offenses by defining and attaching criminal consequences to, a subject of the "unlawful" conduct described in **16 U.S.C. § 3372.**

**16 U.S.C. § 3373 (d)** has both felony and misdeaminor provisions in pertinent part, its felony provision states:

> Any person who.......violates any provision of this chapter........by knowingly engaging in a conduct that involves the sale or purchase of, the offer of the sale or purchase of, or the intent to sale or purchase, fish, or wildlife.......with a market value of $ 350.00 knowing that the fish or wild life.......were taken, possessed, transported, or sold in a violation of, or in any manner unlawful under, any anderlying

-6-

> law, treaty or regulation, shall be fined no more than $ 20,000, or imprisoned for no more than five years or both.

**16 U.S.C. § 3373 (d)(1).** In pertinent part, its misdeaminor proviso states:

> Any person who knowingly engage in a conduct prohibited by this provision of this chapter.......and in the exercise of due care should know that the........wildlife............were taken, possessed, transported, or sold in a violation of, or in manner unlawful under, any underlying law, treaty or regulation shall be fined no more than $ 10, 000, or imprisoned for no more than one year. or both.

**16 U.S.C. § 3373 (d)(2).**

At the present case petitioner was sentenced to a term of imprisonment of 84 months, 3 years of superviced release. Petitioner arguments, in which for counsel's lack of strategy, actions or inactions failed to prepare a defense. In which petitioner asserts a number of arguments in support of this motion (1) the Lacey Act cannot be read to apply for his conduct because his a rural Alaska native and the transaction were made consistent with "customary trade." (2) because the relevant statutory language is, at best, ambiguous, both the rule of lenity and the Act's legislative history (which petitioner reads to suggest that the Act is not intended to reach activities of Rural Alaska natives) precludes its application to his conduct; (3) Alaska's disparate treatment to Alaskans native hunters

is unconstitutional. Petitioner did not violate the Act's felony proviso, he violated its misdemeanor proviso, petitioner challenges the sufficiency of the evidence, because the Government lacked evidence that the Walrus in question had "market value[s] in excess of $ 350," **16 U.S.C. § 3373 (d)(1).** Only the market value argument gives this honorable court significant pause; that the Government failed to establish that the animal petitioner killed had market value in excess of $350 raises a potentially difficult question by Counsel's ineffective assistance of counsel.

This Honorable court in her wisdom would reverse the conviction outright or, despite the lack of either misdemeanor offense. Petitioner ask this Honorable court in her inheritant to invoke her authority would remand with instruction to an evidentiary hearing, and re sentence petitioner under the Act's misdemeanor proviso. See, **Ruthledge v. United States 517 U.S. 292, 305-07 (1996)** (noting tha the court's approval of the "Uniform" conclusion they may direct the entry of a judgment of lasser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense). **United States v. Melton,** 491 F. 2d 45, 57-58 (D.C. Cir. 1973) remanding on a lesser offense. See, **United States v. Vasquez Chan,** 978 F. 2d 546, 554 &nn.5, 6 (9th Cir. 1992). After all Conduct meeting all the elements of the misdemeanor proviso 16 U.S.C. § 3373 (d)(1).

As petitioner has stated throughout these proceedings made specific argument that there is insufficient evidence to support

-8-

his conviction because the Government has misinterpreted **16 U.S.C. § 3372**. Petitioner specifically argue that there was insufficient evidence to support conviction with respect to the knowledge requirements of **16 U.S.C. § 3373(d)**. Petitioner conviction on the bases of the defect and as well ineffective assistance of counsel appear to be governed by the jurisprudence of **Fed. R. Crim. P. 52 (b)**.

**Rule 52 (b)** provides "plain errors or defects affecting substantial rights may be noticed although they were not brought to the court's attention. The Supreme Court has interpreted this provision to confer a highly circumscribed authority on District Court's as well Appellate Court's **United States v. Bradstreet, 135 F.3d 46, 50-51 (1st Cir. 1998)** (discussing the combined effect of **United States v. Olano**, 507 U.S. 725 (1993), and **Johnson v. United States**, 520 U.S. 461, 137 Led 2d 718 (1977) to be correctable under Rule 52 (b), an error ir, defect must be "plain" meaning "clear" or "ovbious" it must have "affected substantial" rights, meaning, in most cases, "it must have affected the outcome of the District Court proceedings"; and leaving it uncorrected must strike us having the potential to "seriously affecte[] the fairness integrity and public reputation of judicial proceedings."

The defect here is obvious the word "were" in **16 U.S.C. § 3373 (d)** plainly cannot encompass prospective conduct in these circumstances and that affected the outcome of petitioner's sentence on this Writ Of habeas Corpus therefore turns on whether systematic considerations militate in favor of evidentiary hearing

petitioner is clearly guilty of having committed misdemeanor violation of certain Alaska hunting law, petitioner is just as clearly innocent of the felony charges for which he was sentenced. this then, is not just a situation where if petitioner went to trial may have ended in acquital had the defect of "Customary Trade" been raised it is a case of demonstrable actual innocent of the crimes charged. That there is a strong institutional interest in informing the Government that it instruction of the Act is seriously flawed. The Government cannot prosecute such conduct under 16 U.S.C. § 3373 (d), does not encompass the conduct underlying petitioner's conviction.

> Under criminal rule requiring court to determine thet the defendant and his counsel had the opportunity to read and discuss presentence report, court has affirmative duty before sentencing to ensure that the defendant and counsel have read report and have discussed it. **Fed. R. Crim. P. § 32 (c)(3).**

**Rule 32 (c)(3)** provides in relevant part:

> Before sentence, the court must: (A) verify that the defendant's counsel have read and discussed the presentence report.....[and] give the defendant's counsel a reasonable opportunity to comment on that information.

"[T]he plain language of [the rule] requires that the court determine whether or not the defendant and his counsel have had the opportunity to read and discuss the report." United States v. Lewis, 880 F.2d 243, 245 (9th Cir. 1989).

-10-

At sentencing the district court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." **Fed. R. Crim. P. 32 (i)(4)(A)(ii)**, the court not only must do that but also afford the defendant an opportunity to "present all available and accurate information bearing or mitigating of punishment." The District Court must then "listen and give careful consideration to such information.

In the present case there is no indication that the petitioner had read and discussed the presentence report either memoranda with counsel, The court was required. Petitioner's argument in this proceedings he was denied of his Federal and constitutional right protected under the Fifth (5th) Amendment Due Process of Law when the probation officer determined and stated in the report that the offense severity rating, but for counsel's failure to review the presentence report with peitioner **Rule 32 (c)(3)(D)**, of the Federal Rules of Criminal procedure provides that if the actual accuracy of a presentence report is challenged by a defendant or his counsel, the district court must either make a finding as to the allegation or make a determination to no such finding is necessary as the controverted matter will not be taken into account by the sentencing court. Also provides that a writing record of such a findings or determination shall be appended to the presentence report. That was not done in this case. Because the district court did not make a finding on the record concerning the disputed fact that the petitioner had the opportunity to review

-11-

the presentence report with counsel. As required by **Fed. R. Crim. P. 32(c)(3)(D),** and did not attach its findings and determination to the presentence investigation report as required by the rule. This Honorable court repeatedly have held that a district court may not satisfy its obligation by simply adopting the presentence report as its findings. If the district court fails to comply with **Rule 32** there is grounds to remand for the court to either make the necessary findings and attach them to the presentence report, of to enter a declaration that it did not take the controverted matters into account to sentencing the petitioner.

> When defense counsel discern only one plausible line of defense to serve his client's interest, effective counsel is obligated to conduct reasonable substantial investigation into such line before proceeding, and failure to perform investigation is clear example of breach of duty to investigate.

The Sixth Amendment guarantees a criminal defendant the right to assistance of counsel, **Gideon v. Wainwrith**, **372 U.S. 335 (1963).** Is a vital corollary to this guarantee is the requirement of effective Assistance of counsel, that is, counsel reasonable likely to render and rendering reasonable effective assistance given the totally of the circumstances. **McMan v. Richardson, 397 U.S. 759, 771 (1970).**

An accused's the right to be represented by counsel is fundamental competent of our criminal judicial system. Lawyers in criminal cases "are necessities, not luxeries."

The Sixth Amendment is mean to assure fairness in the adversary criminal process. **United States v. Cronic, 466 U.S. 648 (1984).** "the very premise of our adversary system of criminal justice is a partisan advocacy on both sides of the case will be best promote the ultimate objective that the guilty be convicted and the innocent go free." **Id. at 655** (quoting **Herring v. New York, 422 U.S. 853, 862 (1975).** Because this "very premise" is the foundation of the rights secured by the Sixth Amendment, were the Sixth Amendment is violated , "a serious risk of injustice infects the trial itself." **Id. at 656** (quoting **Cuyler v. Sullivan, 466 U.S. 335, 343 (1980).** The Supreme Court has instrut us to evaluate prosecutorial behavior based on its effects on the fairness of the trial. See, **United States v. Augurs, 427 U.S. 97 (1976).** "As an officer of the court , the prosecutor has a heavy responsibility both to the court and to the defendant to conduct a fair trial...." **United States v. Escalante, 637 F. 2d 1197, 1203 (9th Cir. 1980).** the Court has instruct us to be mindful of "whether, despite the strong presumption  of reliability, the result of the particular proceeding is unreliable because of the breakdown of the adversarial process that our system counts on to produce just results. **Strickland v. Washington, 466 U.S. 668 (1984).** With this guiding principles in mind we turn to petitioner's Sixth Amendment claim.

Petitioner Sixth Amendment right to counsel attached when the Government initiated adversarial proceedings against him. See, **Maine v. Moulton, 474 U.S. 159 (1985).**

At that point, petitioner had the right to rely on his counsel as a "medium" between himself and the Government. **Id. at 176.** Petitioner's Sixth right to Counsel was offense specific. See, **McNeil v. Wisconsin**, 501 U.S. 171, 175 (1991). that is he had the right to counsel only on the offenses for which he had been indicted, and on any other offenses that constituted the "same offense" under the **Blockburger** test. See, **Texas v. Cobb**, 532 U.S. 162, 167-73 (2001); **Bolckburger v. United States**, 284 U.S. 299, 304 (1932).

Most obvious, is the complete denial of counsel. the presumption that counsel's assistance is essential require us to conclude that the proceedings was unfair the accused is denied counsel at the critical stage of the proceedings. The court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceedings. at petitioner's case counsel failed the short time and interviews with petitioner was stating all the time that he better plead guilty, if he does not plead guilty he was facing a harsh sentence from 15 years to 20 years. Similarly, Petitioner challenges a guilty plea after sentencing on the ground that his lawyer provided him ineffective assistance his counsel's advice was not "within the range of competence demanded for attorney's in criminal cases," **Hill v. Lockhart**, 474 U.S. 52,56 (1985) (quoting **McMann v. Richardson**, 397 U.S. 759, 772 (1970). "There is a reasonable probability that, for counsel's errors, he would not have pleaded guilty and would have insisted going to trial".

-14-

In other words, petitioner has meet the two part standard from **Strickland v. Washington,** 466 U.S. 668 (1984). A layman will ordinarily be able to recognize Counsel's errors and to evaluate counsel's professional performance. Consequently a criminal defendant will rarely know that he has not been represented competently until after trial or appeal, usually when he consults with other lawyer about his case. In the present case counsel for petitioner show some picture of the "Walrus" from a boat in which it was not reliable, as well counsel failed to file a motion to suppress evidence, statements from his father in law, tape recordings and other evidence in the Government's possession, where a "procedural default is the result of ineffective assistance of counsel.

As the Supreme Court observed in **Powell v. Alabama,** 287 U.S. 45 (1932). The Supreme Court noted:

> "If charged with a crime, he is incapable generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rule of evidence left without the aid of counsel he may be put on trial without proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and the knowledge adequately to prepare his defense even though he has a perfect one."

At the present case Petitioner claims that his attorney was incompetent in his representation because he failed to investigate the case properly, to confer with petitioner of the

-15-

Petitioner asserts that counsel provided ineffective assistance of counsel in conjunction with his guilty plea and the investigation in the proceeding it. A guilty plea is a "grave and solemn act" that results in a waiver of a constitutional right to trial. **Brady v. United States**, 397 U.S. 742, 748 (1970). The plea must represent a "Voluntary and intelligent choice among the alternative courses of action open to the defendant." **Hill v. Lockhart**, 474 U.S. 52,56 (1985). Once the defendant has entered a guilty plea upon the advice of counsel he can only attack its voluntary and intelligent nature by showing that he received ineffective assistance of counsel.Id at 56, 57; **United States v. Broce**, 488 U.S. 563, 574 (1989). _"A failure of counsel to provide advice [on a guilty plea] may form the basis of ineffective assistance of counsel.")

Counsel has an obligation to conduct a reasonable investigation which allow the counsel to make informed decisions about how best to represent his client. **Strickland, 466 U.S. at 691.** "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes a particular investigations unnecessary." Id. the Supreme Court has also held that trial counsel has his duty to conduct a thorough investigation of the defendant's background. **Williams v. Taylor, 529 U.S. 362, 396 (2000).** Counsel's conduct fail bellow the standard of reasonableness because he failed to: (1) hire an investigator and/or investigate petitioner's background, including his alcohol exposure, and the background of his co-defendant' how were to testify against him, for impeachment material: (2) review discovery to learn of the enhanced tape recording of his

-16-

co-defendants tape recording statements; (3) compare the tape recording to the transcript and discover the significant transcription error attributing false admission of the "walrus" at issue. In the absence of reasonable investigation counsel cannot accurately assess the strength of the Government's case to assist the petitioner in weighing the alternative course of action open to him. **Hill**, 474 U.S. at 691. Counsel has a duty following his independent examination of the facts, circumstances, pleadings and laws.......to offer him informed opinion as to what plea should be entered. **Von Moltke v. Gillis**, 332 U.S. 708 (1948).

At the present case counsel never discussed the case with petitioner, never went to discuss the case at the Detention Center, the few phone calls petitioner made to counsel's office, counsel treated the petitioner if he does not plead guilty he will be facing a trem of 15 to 20 years of prison, "Counsel must ensure that the clients decision is an informed as possible." An accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and law involved and then to offer his informed opinion. However, Counsel was obligated to share his assessment with petitioner which he failed to do. **McMann v. Richradson**, 397 U.S. 759, 769-70 (1970). Defense counsel must make best judgment as to the weight of the Government case and share his predictions with the petitioner even though the prediction are necessarily uncertain. The assessment was likely based in part on co-defendant's statements made to the police. This evidence weighed in favor of an acquittal of the killing of the walrus. To fail to make any recomendation is

-17-

not a trial tactic or strategy but a dereliction of duty. it is counsel conduct is below the objective standard of reasonableness, of **Strickland,** standard. When counsel does not perform as reasonable investigation or explain why it was unnecessary and fails to offer an informed opinion on the plea, counsel is not acting as counsel guaranteed by the Sixth Amendment. When a defendant enters a plea that offers no benefit and counsel fails to inform that the defendant of that fact counsel's performance was bellow the required level of competence. Petitioner's plea offered no benefit but assured that he would receive the most severe penalty available. This concludes that counsel's investigation and advice of the plea fell significantly the objective standard of reasonableness. A Defense attorney's exclusive reliance upon a defendant's representation regarding criminal history, of counsel's concomitant failure to "run a criminal records check," "is certainly not laudatory ". Nevertheless, "a determination of whether reliance on a clients statement of his own criminal history constitutes deficient performance depends on the peculiar facts and circumstances of each case, " under the "peculiar and circumstances" of the present case, counsel's failure to review to ask petitioner specific questions concerning the nature of petitioner's prior case and failure otherwise to investigate the prior case constitute ineffective assistance of counsel. Ineffective of counsel to rely upon defendant's representation that defendant thought the information in the rap sheet accurate where counsel did not explain the defendant the "critical distinctions between arrest and conviction felony and misdemeanor. In **Strickland** ---

-18-

analysis, however, the court deals un probabilities, not certainities. See, **United States v. Day**, 969 F. 2d 39, 45 n. 8 ( 3rd Cir. 1992)(Strickland does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only 'reasonable probability' that this is the case. The prejudice inquiry in such cases focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. [Hill v. Lockhart 474 U.S. 52]. The court recognizes that some things are so egregious that can be said to demostrate "per se" ineffective assistance of counsel. For example, when a defense attorney abandons his duty of loyalty to his client and effectively joins the Government in effort to obtain a conviction, that attorney suffers from an obvious conflict of interest that demonstrates ineffective assistance of counsel. **Frazer v. United States**, 18 F.3d 778, 782 (9th Cir. 1994).

## CONCLUSION

Therefore petitioner pray and asks this honorable court, in her wisdom to grant an evidentiary hearing, and to restore the petitioner from the injury suffered from constitutional violation., The case is ripe for review, and that this Honorable court would grant the remedies requested and all other relief that this Honorable may deem just and appropriate.

Respectfully Submitted

Dated: 7-5-06

*[signature]*
Herman Oyagak

-19-